UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| HAROLD PORTER | CIVIL ACTION NO. 6:19-0265 |
| VERSUS | JUDGE SUMMERHAYS |
| STRYKER CORP., ET AL. | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Pending before the undersigned Magistrate Judge is the Motion to Remand [Doc. 8] filed by the plaintiff, Harold Porter ("plaintiff"). The motion is opposed by defendants Stryker Corporation, Mako Surgical Corporation, and Howmedica Osteonics Corporation (collectively, "defendants") [Doc. 13]. For the reasons explained below, the motion is DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2019, the plaintiff filed a petition in the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana against defendants Stryker, Mako, and Howmedica, as well as Lafayette General Surgical Hospital ("LGSH"), alleging that plaintiff underwent a Mako robotic-assisted knee replacement surgery at LGSH and that following this surgery, the plaintiff allegedly sustained tibial fractures in both knees, which required additional medical treatment. The plaintiff attributes these injuries to an allegedly faulty Mako system utilized during his initial

surgery, which was "developed, manufactured, sold, and/or distributed by" Stryker, Mako, and/or Howmedica. With respect to LGSH, the plaintiff alleges that LGSH "failed in its duty owed plaintiff" as the owner and custodian responsible for ensuring the "proper care, maintenance and performance of" the Mako system.

On March 1, 2019, defendants Stryker, Mako, and Howmedica removed this action on the basis of diversity jurisdiction. These defendants also filed a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [Doc. 6], which seeks to dismiss the claims against them as manufacturers of the Mako system on grounds the plaintiff failed to plead sufficient facts to establish the characteristics of the Mako system at issue that rendered it "unreasonably dangerous." Defendants further contend that plaintiff failed to show that the alleged unspecified defects in the Mako system led to the plaintiff's alleged injuries. On March 29, 2019, plaintiff filed the instant Motion to Remand in which he asserts that this suit was improperly removed because LGSH is a Louisiana citizen, therefore, complete diversity is lacking.

## ANALYSIS

This suit was removed by the defendants on the basis of diversity. The defendants argue that LGSH, which is not diverse, was improperly joined. Specifically, the defendants contend that there is no possibility of recovery against LGSH because the plaintiff's claims against LGSH arise under the Louisiana

2

Medical Malpractice Act, La. Rev. Stat. §40:1231.1, *et al.*, and the plaintiff has failed to exhaust administrative remedies under the Act. The defendants assert that the claims have not been presented to a medical review panel, which is jurisdictionally necessary before the filing of the claim in federal court. Consequently, this Court must determine whether the plaintiff's claims against LGSH fall under the LMMA. If they do, this Court lacks jurisdiction over LGSH, and the citizenship of LGSH is, therefore, not considered by the Court in determining whether remand is appropriate.

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[1] Accordingly, federal courts have subject-matter jurisdiction over only civil actions presenting a federal question[2] and those in which the amount in controversy exceeds $75,000 and the parties are citizens of different states.[3] For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court

---

[1] See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co*., 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co*., 243 F.3d 912, 916 (5th Cir. 2001).

[2] 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1332.

jurisdiction establishes otherwise.[4]  Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns."[5]  The removal statute must, therefore, be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal-court jurisdiction.[6]  The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence.[7]  When an action is removed from state court, as this suit was, the removing party bears the burden of proving that federal-court jurisdiction exists.[8]  Accordingly, the defendants, as the removing parties, have the burden of establishing that this Court has subject-matter jurisdiction over this action.

---

[4] *Howery v. Allstate*, 243 F.3d at 916.

[5] *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

[6] *Carpenter v. Wichita Falls*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[7] *Howery v. Allstate Ins. Co.*, 243 F.3d at 919; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[8] *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

To remove a case based on diversity jurisdiction, a defendant must demonstrate "that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[9] Thus, the removing defendant must establish that the amount in controversy exceeds $75,000 and that the parties are diverse in citizenship.[10] In this case, the removing defendants contend that these criteria are satisfied when the citizenship of LGSH, the allegedly improperly joined defendant, is disregarded, while the plaintiff argues that complete diversity does not exist because there is no basis for disregarding LGSH's citizenship.

A. **DOES THE AMOUNT IN CONTROVERSY EXCEED THE STATUTORY THRESHOLD?**

The amount in controversy is the sum claimed by the plaintiff in his complaint if the claim was apparently made in good faith.[11] When the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the

---

[9] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (*en banc*).

[10] 28 U.S.C. § 1332.

[11] *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253; *De Aguilar v. Boeing Co.*, 47 F.3d at 1408; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992).

jurisdictional threshold.[12] This burden can be satisfied either by demonstrating that the amount in controversy is facially apparent from the plaintiff's pleadings or by setting forth the facts in controversy with summary-judgment-type evidence that support a finding of the requisite amount.[13] In this case, the plaintiff alleges that he underwent a Mako robotic-assisted knee replacement surgery at LGSH and that following this surgery, he sustained tibial fractures in both knees, requiring two additional major reconstructive surgeries. Although no specific amount of damages is stated in the Petition, common sense indicates that it is more likely than not that if plaintiff is successful, he would recover damages in excess of $75,000. Accordingly, the undersigned finds that it is facially apparent that the plaintiff's claims exceed the $75,000 statutory threshold for jurisdiction under 28 U.S.C. § 1332.

**B.  ARE THE PARTIES DIVERSE IN CITIZENSHIP?**

The basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by inference.[14] Therefore,

---

[12] *Simon v. Wal–Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[13] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Allen v. R & H*, 63 F.3d at 1335.

[14] *Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

when jurisdiction depends on citizenship, citizenship must be distinctly and affirmatively alleged.[15]

The defendants in this lawsuit are corporations. Under 28 U.S.C. §1332(c)(1), a corporation is deemed to be a citizen of any state in which it is incorporated and any state where it has its principal place of business. A party invoking diversity jurisdiction, therefore, must allege both the state of incorporation and the principal place of business of each corporate party.[16]

In their removal notice, the defendants establish that Mako is a Delaware corporation with its principal place of business in Florida; Stryker is a Michigan corporation with its principal place of business in Michigan; and Howmedica is a New Jersey corporation with its principal place of business in New Jersey. Defendants further state that LGSH is a Louisiana limited liability company that is domiciled in Lafayette, Louisiana, making it a citizen of Louisiana for diversity purposes. Because the plaintiff is also a Louisiana citizen, defendants concede that LGSH is non-diverse but argue that LGSH was improperly joined and its citizenship should not be considered for jurisdictional purposes.

---

[15] *Getty Oil v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988).

[16] *Illinois Central v. Pargas, Inc.*, 706 F.2d at 637.

At the time of removal, these allegations were sufficient to permit the undersigned to evaluate the citizenship of the parties. If LGSH's citizenship is disregarded, as requested by the defendants, the parties are diverse, and the motion to remand should be denied. If LGSH's citizenship must be considered, however, diversity is destroyed. The undersigned must determine, therefore, whether LGSH was improperly joined.

C.   **WAS LGSH IMPROPERLY JOINED?**

To establish the improper joinder of a non-diverse defendant, the removing defendants must demonstrate actual fraud in the pleading of jurisdictional facts, or the inability of the plaintiff to establish a cause of action against the non-diverse party in state court.[17] A defendant who contends that a non-diverse party is improperly joined, however, has a heavy burden of proof.[18]

In this case, the defendants argue that that LGSH is improperly joined because there is no possibility of recovery by the plaintiff against them. In determining whether there is a reasonable basis for state liability, which requires a reasonable probability of recovery, the court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable

---

[17] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[18] *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

8

to the plaintiff. The court must then resolve all contested issues of substantive fact in favor of the plaintiff.[19] If the court finds that there is no possibility of recovery against the non-diverse party then the non-diverse party has been improperly joined. Its citizenship must then be disregarded for jurisdictional purposes.[20]

In the original petition, plaintiff couched his claims against LGSH as claims sounding in negligence, alleging "the Mako system was in the custody/and or owned by [LGSH] which was responsible for its maintenance, upkeep, and proper working condition of the system." Plaintiff also claims that LGSH failed to "properly maintain, care for, and ensure proper functioning of its equipment," thus rendering LGSH liable for the plaintiff's injuries under Louisiana Civil Code Articles 2315 and 2317.1. The plaintiff expressly alleges that "it is not the intent of this suit to assert any cause of action against [LGSH] which falls under the Louisiana Medical Malpractice Act."[21]

In their opposition to the motion to remand, however, defendants argue that the plaintiff's claims as pled against LGSH fall under the LMMA as a matter of law and cite *Rogers v. Synthes, Ltd.*, 626 So.2d 775 (La. App. 2nd Cir. 1993) in support

---

[19] *Green v. Amerada Hess*, 707 F.2d at 205; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

[20] *Smallwood v. Illinois Cent.*, 385 F.3d at 577.

[21] *See* Plaintiff's Complaint, paragraph 9.

of their argument. In *Rogers*, the plaintiff alleged injury after a surgically implanted prosthesis broke. The plaintiff sued the manufacturer of the prosthesis, as well as, the hospital where the procedure was performed, alleging general tort and products liability theories. He also specifically asserted that the hospital was liable because it acted as a professional vendor when it sold the prosthesis to the plaintiff. The hospital filed an exception of prematurity, arguing the lawsuit was an action for damages for medical malpractice arising out of treatment rendered to the plaintiff. The hospital also argued that under the LMMA, no action against a health care provider can be commenced in state court before the complaint has been presented to a medical review panel. The court agreed, and the plaintiff appealed.[22]

The trial court's decision was upheld on appeal, with the appellate court affirming the hospital's interpretation of the LMMA, to wit:

> The plaintiff contends that the trial court erred in finding that this action falls within the scope of the Louisiana Medical Malpractice Act, [LSA–R.S. 40:1231.1, *et seq.*][23] which requires submission of a claim to a medical review panel for decision prior to filing suit in the district court. The plaintiff argues that she made no allegations concerning Schumpert which are under the scope of the act. Characterizing her

---

[22] *Rogers*, 626 So.2d at 777.

[23] The Louisiana Medical Malpractice Act was previously cited as La. Rev. Stat. §40:1299.47, but was redesignated as La. Rev. Stat. §40:1231.8 in 2015. The current version of the statute became effective in 2017.

10

suit as one in products liability and redhibition, as opposed to medical malpractice, the plaintiff argues that she did not allege any negligence on the part of Schumpert and therefore did not have to seek the formation of a medical review panel. This argument is meritless.[24]

"Malpractice" is currently defined in the LMMA as follows:

"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

Finding that the hospital was a qualified health care provider under the former version of the LMMA, the Louisiana Second Circuit concluded the plaintiff's suit was an action for damages for medical malpractice under the Act, which provided then, and still provides now, that:

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.[25]

---

[24] *Id.* at 776-77.

[25] La. Rev. Stat. 1231.8(B)(1)(a)(i).

In discussing the scope of claims that fall under the LMMA, the *Rogers* court specifically explained:

> In general, any conduct by a hospital complained of by a patient is properly within the scope of the Louisiana Medical Malpractice Act if it can reasonably be said that it comes within the definitions of the act, even though there are alternative theories of liability. *Austin v. St. Charles General Hospital*, 587 So.2d 742 (La. App. 4th Cir.1991), *writ denied*, 590 So.2d 80 (La.1991).[26]

In this case, the defendants argue the plaintiff's claims against LGSH for its alleged negligence in failing to properly maintain the Mako device are claims of medical malpractice. The undersigned agrees. First, the plaintiff is alleging damage or injury caused by a defective medical device. He is asserting a malpractice claim which under the LMMA, includes "unintentional tort[s] . . . based on health care or professional services rendered." "Tort" is defined under the Act as "any breach of duty or any negligent act or omission proximately causing injury or damage to another."

The court is further guided by the analysis set forth by the Fifth Circuit in *Flagg v. Stryker Corp.*, 819 F.3d 132 (5th Cir. 2016) and by the district court in *Moll v. Intuitive Surgical, Inc.*, 2014 WL 1389652 (E.D. La. March 31, 2014). In *Flagg*, an en banc panel of the Fifth Circuit unequivocally held that the addition of

---

[26] *Rogers* 626 So. 2d at 776–77.

12

a Louisiana healthcare provider to a lawsuit against a medical device manufacturer constitutes improper joinder and does not defeat the court's diversity jurisdiction when the plaintiff fails to first exhaust the administrative remedies of the LMMA.

Similarly, in *Moll*, the plaintiff brought a class action lawsuit against the manufacturer of a robotic device, as well as, Ochsner Health System in order to recover for injuries sustained as the result of a robot-assisted laparoscopic hysterectomy. The plaintiff initially filed suit in state court. The plaintiff alleged that during a robot-assisted laparoscopic hysterectomy, the robotic device caused her to suffer a left ureter cautery burn. This incident prevented the insertion of a post-operative stent, which caused her to have to undergo a ureteral re-implantation. *Moll v. Intuitive Surgical, Inc.,* 2014 WL 1389652, at *1 (E.D. La. Apr. 1, 2014). Upon removal to federal court, Ochsner moved to dismiss the claims against it on grounds it is a qualified healthcare provider under the LMMA and that because the plaintiff had not proceeded through the necessary medical review panel process, any claims alleged against it were premature. The plaintiff, a Louisiana resident, moved to remand on the basis that the presence of Ochsner, which is a Louisiana corporation, destroyed diversity jurisdiction.

Explaining that the crux of both motions was whether Ochsner had been improperly joined, the court concluded that the plaintiff's claims fell under the

MMA, to wit:

> Here, the MMA applies to the claims made by Ms. Moll against Ochsner. This is an unintentional tort that is based on healthcare services rendered. It clearly involves the responsibility of a healthcare provider with regard to "defects in or failures of prosthetic devices implanted in or used on or in the person of a patient." La.Rev.Stat. § 40:1299.41(a)(13). It does not matter that the device at issue is not the patient's prosthetic, but the doctor's.[27]

Like the plaintiff in *Moll*, the plaintiff in this case alleges that LGSH, is liable to her for injuries she allegedly sustained by virtue of the use of a defective robotic device as the "owner and custodian" of the device. Review of the claim, however, shows that any injury the plaintiff sustained was an unintentional tort and that the injury occurred during the provision of health care services. As the court stated in *Moll*, it does not matter that the device at issue is not the patient's prosthetic device, but the doctor's. The LMMA covers "any breach of duty or any negligent act of omission proximately causing injury or damage to another" and includes injuries "arising from defects in or failure of prosthetic devices implanted in or used on or in the person of a patient." Considering the foregoing, the undersigned concludes that the plaintiff's claims fall squarely under the LMMA. The Court, therefore, necessarily concludes that the plaintiff's claims against LGSH are premature in that the plaintiff has not exhausted his administrative remedies by presenting these

---

[27] *Moll*, 2014 WL 1389652 at *4.

claims to a medical review panel. For this reason, LGSH was improperly joined in this matter, and the citizenship of LGSH is to be disregarded for purposes of this Court's jurisdictional review. Given that the remaining defendants are diverse in citizenship, the undersigned concludes this Court has complete diversity over the remaining parties, and the motion to remand should be denied.[28]

## CONCLUSION

Considering the foregoing, the plaintiff's Motion to Remand [Doc. 8] is DENIED.

Signed at Lafayette, Louisiana, this 12th day of August, 2019.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[28] This Court does not address the plaintiff's additional argument in support of remand, that the removal of this matter is defective because LGSH did not join or consent in the removal. Under well-established jurisprudence, a removing party need not obtain the consent of a co-defendant if the removing defendant contends that co-defendant is improperly joined. *Rick v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).